UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAMUEL RUSS OXLEY,

    Plaintiff,

    v.

DEPUTY SAMUEL JONES, et al.,

    Defendants.

Case No. 23-cv-00510 BLF (PR)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; OVERRULING OBJECTION TO VIDEO EVIDENCE**

(Docket Nos. 55, 64)

Plaintiff, a pretrial detainee, filed the instant *pro se* civil rights complaint under 42 U.S.C. § 1983, against officers of the Contra Costa County Sheriff's Department.  Dkt. No. 1.  The Court found the complaint stated cognizable claims and ordered the matter served on Defendants.  Dkt. No. 14.  Defendants Samuel Jones, Daniel Husted, Zachary Williams, and Andreas Gianopoulos filed a motion for summary judgment on the grounds that there is no genuine dispute of material facts and they are entitled to judgment as a matter of law.  Dkt. No. 55.[1]

---

[1] In support of their motion, Defendants submit the declarations of Defendant Zachary Williams, Ex. C, Defendant Andrea Gianopoulos, Ex. F, Defendant Samuel Jones, Ex. G, and Defendant Daniel Husted, Ex. H.  Dkt. No. 57.  With the declarations, Defendants submit exhibits which include excerpts from Plaintiff's deposition transcript, Ex. B,

Plaintiff filed an opposition, Dkt. No. 67,[2] and Defendants filed a reply, Dkt. No. 68.

Plaintiff objects to the submission of Defendants' video evidence because he is concerned the ones he was shown were redacted and are not identical to the videos submitted to the Court. Dkt. No. 64 at 2. Plaintiff also requests a court reporter to make a "complete and accurate verbatim record of every word spoken… that has not been redacted of said video evidence." *Id.* In response, Defendants' counsel filed a declaration stating that on June 6, 2024, he met with Plaintiff and showed him the videos which were submitted as Exhibits D and E to Defendants' summary judgment motion. Dkt. No. 66 at 3. Counsel declares under penalty of perjury that the videos were identical to the ones submitted to the Court. *Id.* Plaintiff's allegation that the videos he was shown were possibly redacted is unsubstantiated and vague. Furthermore, the Court notes that Plaintiff also relies on this video evidence in his opposition. *See, e.g.,* Dkt. No. 67 at 25. Accordingly, the objection is overruled.

For the reasons discussed below, Defendants' motion for summary judgment is **GRANTED**.

## DISCUSSION

### I.    Statement of Facts[3]

The underlying incident for this action took place on July 7, 2022, in Rodeo, California. On that day, Defendants Jones and Husted were assigned to work as patrol deputies. Jones Decl. ¶ 2, Dkt. No. 57-6 at 2; Husted Decl. ¶ 2, Dkt. No. 57-7 at 2. At

excerpts of videos showing interactions between Plaintiff and Defendants Williams and Gianopoulos in the interview room, Exs. D, E, and excerpts from Plaintiff's medical records, Ex. I. *Id.*

[2] The opposition Plaintiff filed after reviewing Defendants' video evidence is the operative opposition, not the prior one he filed on May 13, 2024. Dkt. No. 59.

[3] The following facts are undisputed unless otherwise indicated.

United States District Court
Northern District of California

approximately 5:22 a.m., Defendants Jones and Husted were dispatched to investigate a possible forcible sexual assault. *Id.* When they arrived at the scene, Defendant Jones was informed by the victim that Plaintiff had forced her inside his residence and chased her around the house. *Id.* Defendants proceeded to Plaintiff's residence, which was identified to them by another deputy. *Id.*

Defendants saw Plaintiff walking out of the front door carrying various items. Jones Decl. ¶ 3; Husted Decl. ¶ 3; Oxley Decl. ¶ 4, Dkt. No. 67 at 6. Defendant Jones ordered Plaintiff to drop the items, and then detained him in handcuffs for further investigation; Defendant Husted assisted in handcuffing Plaintiff by holding on to one of his arms while Defendant Jones applied the handcuffs. *Id.* According to Plaintiff, Defendant Husted pointed his pistol at him while Defendant Jones put the handcuffs on him tightly. Oxley Decl. ¶ 7, Dkt. No. 67 at 6. Plaintiff was a large person, appearing to weigh over 300 pounds. Jones Decl. ¶ 4; Husted Decl. ¶ 4. According to Defendants, Plaintiff had large wrists and arms, so that when Defendant Jones placed handcuffs on him, he put them on as loosely as possible, consistent with his training, and double locked the handcuffs to ensure that they could not get any tighter. *Id.* Defendant Jones put Plaintiff in the back of his patrol car while he and other deputies conducted a further investigation of the incident. Jones Decl. ¶ 5; Husted Decl. ¶ 5. The Sheriff's Office policies provides: "All subjects placed into custody will be properly restrained by securely applied double-locked handcuffs placed behind the back." *Id.*

According to Plaintiff, he asked Defendant Jones to loosen the handcuffs but was ignored while being placed in the patrol car; the handcuffs were cutting off circulation and he was in much pain. Oxley Decl. ¶ 8, Dkt. No. 67 at 6. Plaintiff states that when he asked for additional cuffs, he was ignored. *Id.* ¶ 9. After about 15 minutes, Plaintiff was yanked out of the vehicle hard by Defendant Husted to conduct a field identification. *Id.* Plaintiff states Defendant Husted did nothing when asked to loosen the handcuffs. *Id.* Plaintiff states that although there were other deputies standing around the vehicle, he

was ignored when he "complained very loudly asking for help." *Id.* Plaintiff states that he was put back in the vehicle with the handcuffs still cutting into his skin, his wrists in pain. *Id.* ¶ 10. When Defendant Jones later entered the vehicle, Plaintiff continued to beg him to loosen the handcuffs. *Id.* ¶ 11.

Plaintiff also alleges that "deputy Williams ignored me when I asked to loosen the handcuffs" before being put back in the vehicle. *Id.* ¶ 10. However, Defendant Williams states that he was not at the scene of Plaintiff's detention in Rodeo, nor did he put handcuffs on Plaintiff or see anyone put handcuffs on him. Williams Decl. ¶ 8, Dkt. No. 57-3 at 3.

According to Defendants, a few minutes passed until Defendant Jones pulled Plaintiff out of the car as part of the investigation. Jones Decl. ¶ 6. Plaintiff complained about the handcuffs being painful and hurting his wrists. *Id.* Defendant Jones tried to address Plaintiff's complaints by double handcuffing him. *Id.* Double handcuffing involves using two sets of handcuffs linked together behind a suspect's back which helps relieve pressure on the shoulders. *Id.* When double handcuffing Plaintiff, Defendant Jones made sure that the handcuffs were placed as loosely as possible, consistent with his training, and double locked them to make sure they could not get any tighter. *Id.* Defendant Jones placed Plaintiff back in the patrol car. *Id.*

Defendant Husted also recalls Plaintiff complaining about the handcuffs being too tight and hurting his shoulders. Husted Decl. ¶ 6. Defendant Husted states that Defendant Jones informed him at the scene that he had checked the handcuffs for proper fit and double locked them. *Id.* Defendant Husted saw Defendant Jones remove Plaintiff from the vehicle and use two sets of handcuffs linked together to try to take pressure off his shoulders. *Id.* Defendant Jones informed Defendant Husted at the scene that he could not put the handcuffs on Plaintiff any more loosely. *Id.*

According to Plaintiff, he repeatedly complained about the tight handcuffs and asked them to be loosened, but Defendants continuously ignored him. Dkt. No. 67 at 6-7.

4

1    Plaintiff denies that Defendant Jones ever applied two sets of handcuffs. *Id.* at 19.

2          Defendant Husted had zip tie flexible restraints in his car at the time of Plaintiff's

3    arrest but states that he did not attempt to use them because they would have put more

4    pressure on Plaintiff's shoulders. Husted Decl. ¶ 8. Furthermore, the zip tie restraints

5    have no mechanism to prevent them from getting tighter once applied, unlike handcuffs

6    that can be double locked. *Id.* Neither Defendants Jones nor Williams had leg restraints.

7    *Id.*; Jones Decl. ¶ 8.

8          At approximately 6:38 a.m., Defendant Jones drove Plaintiff to the Fields

9    Operations Bureau ("FOB") in Martinez, California, to be interviewed by detectives;

10   Defendant Husted remained at the scene to assist with the investigation. Jones Decl. ¶ 7;

11   Husted Decl. ¶ 7.

12         According to Plaintiff, he had been sitting in the back seat for over an hour in pain

13   by the time they arrived at FOB. Oxley Decl. ¶ 13, Dkt. No. 67 at 7. He complained to

14   the front desk of being in pain before being escorted to the interview room by Defendant

15   Jones. *Id.*

16         Defendant Williams was present, having been assigned to assist in the

17   investigation against Plaintiff, specifically to prepare a search warrant application to

18   obtain evidence relating to the investigation. Williams Decl. ¶ 2, Dkt. No. 57-3 at 2. At

19   Defendant Jones' request, Defendant Williams obtained a handcuff key and removed

20   Plaintiff's handcuffs. *Id.* ¶¶ 3-4. The video footage from the interview room shows

21   Plaintiff entering the room restrained with two sets of handcuffs linked together which

22   Defendant Williams then removed. Ex. D. Plaintiff complained of pain in his wrists and

23   asked for some water. *Id.*; Williams Decl. ¶ 4. Defendant Williams went back to his

24   desk and contacted Sheriff's dispatch to request an ambulance to assess Plaintiff's hands

25   and wrists. *Id.* ¶ 5. He returned to the interview room at approximately 7:15 a.m., to give

26   Plaintiff some water and inform him that paramedics were on their way. *Id.*; Ex. D.

27   According to Plaintiff, his hands were discolored and shaking, and his wrist was very

28

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    swollen.  Oxley Decl. ¶ 15, Dkt. No. 67 at 7.

2        The video footage shows the entire subsequent interaction in the interview room

3    between the paramedics, Defendant Williams, and Plaintiff.  Ex. D at 2:47-5:14.[4]  When

4    Plaintiff complained that his wrists were hurting, one of the paramedics physically

5    examined Plaintiff's wrists and observed the "marks" on them from the handcuffs.  Ex. D

6    at 2:47-5:14.  Plaintiff stated that his wrists felt "numb."  *Id.*  The paramedic had Plaintiff

7    rotate his wrists, and after observing Plaintiff do so without difficulty, concluded that

8    "they were definitely not broken."  *Id.*  Plaintiff then stated that he had a pacemaker, and

9    that the handcuffs behind his back had cut off the circulation such that he could not feel

10   his fingers.  *Id.*  When asked if they felt better now that the cuffs were off, Plaintiff stated

11   that they hurt.  *Id.*  The paramedic stated, "Good thing the pacemaker is not related to

12   your wrists," and also explained that all they could do in the room was take Plaintiff's

13   blood pressure and use a machine to check whether oxygen was getting to his fingers.  *Id.*

14   The paramedic also observed that Plaintiff's wrists "look[ed] okay" to him as Plaintiff

15   was "moving them."  *Id.*  When asked if he wanted further medical care at a hospital,

16   Plaintiff confirmed that he did.  *Id.*  The paramedics and Deputy Williams left to get

17   clearance to transport Plaintiff to the hospital.  *Id.*

18       Defendant Williams advised of Plaintiff's request to be transported to the hospital

19   to his supervisor and Defendant Detective Gianopoulos, who had been assigned to

20   investigate the charges against Plaintiff; the paramedics were still present.  Williams

21   Decl. ¶ 7; Gianopoulos Decl. ¶¶ 2-3, Dkt. No. 57-5 at 2.  Defendant Gianopoulos went to

22   speak with Plaintiff in the interview room, and Defendant Williams returned to his desk

23   to prepare the search warrant.  *Id.*  Defendant Williams had no further involvement with

24   Plaintiff and did not make the decision whether Plaintiff would be transported to the

25   hospital or to MDF for booking.  Williams Decl. ¶ 7.

26

27   ──────────────

[4] Defendant Williams' declaration is consistent with the video.  Williams Decl. ¶ 6.

28

United States District Court
Northern District of California

In the interview room, Defendant Gianopoulos told Plaintiff that he wanted to "talk real quick" with him before having him transported to the hospital.  Gianopoulos Decl. ¶ 4; Ex. D.  Defendant Gianopoulos began his interview of Plaintiff at approximately 7:36 a.m., and then stopped at 7:46 a.m., when Plaintiff invoked his right to counsel.  *Id.*  At one point in the interview, he showed Defendant Gianopoulos his wrists and hands, to which Defendant commented that "they [were] a little tight."  *Id.*[5] According to Defendant Gianopoulos, Plaintiff did not appear to be in significant pain during the interview.  Gianopoulos Decl. ¶ 5.

Once Plaintiff's interview ended, Defendant Jones was informed that he was cleared to be taken to Martinez Detention Facility ("MDF") to be booked into county jail. Jones Decl. ¶ 7.  Prior to transporting him, Defendant Jones placed Plaintiff in handcuffs as loosely as possible and double locked them to prevent them from tightening.  *Id.*

According to Plaintiff, as Defendant Jones was about to handcuff him, Plaintiff asked him "not to hurt me."  Oxley Decl. ¶ 29.  When Plaintiff showed him his hands and wrists, Defendant Jones acknowledged that he "[saw] them."  *Id.*  At MDF, Plaintiff was assessed by a nurse as part of the booking process and was medically cleared to be booked into jail.  Ex. J, Dkt. No. 57-9 at 2.

On July 18, 2022, Plaintiff complained about numbness in his hands to a triage nurse.  Ex. I, Dkt. No. 57-8 at 2.  He was seen by a doctor on August 9, 2022.  *Id.*  The doctor indicated that the handcuffs appeared to have caused carpal tunnel syndrome; he prescribed Tylenol and wrist splints.  *Id.*  On September 15, 2022, a neurologist diagnosed Plaintiff with carpal tunnel syndrome and radial sensory neuropathy in his wrists; he recommended continuing with the wrist splints and to consider plastic surgery referral if the condition "persists."  Dkt. No. 67 at 33; Oxley Decl. ¶ 32.

Based on Plaintiff's allegations, the Court found the complaint stated cognizable

---

[5] Plaintiff makes several allegations regarding the interview which are not the subject of this action.  Oxley Decl. ¶¶ 21-27.

claims against Defendants Jones, Husted, and Williams for excessive force related to unnecessarily tight handcuffs. Dkt. No. 27 at 2-3. In their motion, Defendants assert that the claim against Defendants Husted and Williams is better characterized as a failure to intervene in the alleged used of excessive force by Defendant Jones. Dkt. No. 55 at 8. However, Plaintiff's allegations include the claim that he told these Defendants of his overly tight handcuffs and that they ignored him, not that they observed Defendant Jones' use of unnecessary force and failed to intervene. *See supra* at 4. Accordingly, the allegations are sufficient to state an excessive force claim against these Defendants. The Court will therefore not address Defendants' arguments regarding a failure to intervene claim.

## II.    <u>Summary Judgment</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could

find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence presented and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.*

Courts "may not simply accept what may be self-serving account by the police officer," especially in light of contrary evidence. *Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *see id.* (finding summary judgment inappropriate when officer's testimony that a knife-wielding suspect was trying to get up after being shot at 18 times, with 9 of those shots at close range while the suspect was lying on the ground, was contradicted by the video which did not show the suspect trying to get up). "When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders); *see Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (in ERISA case where the issue was whether plaintiff had actual knowledge of an alleged fiduciary breach, the court indicated that plaintiff's denial of knowledge could be discredited at summary judgment stage if it was blatantly contradicted by electronic records showing plaintiff viewed a website containing relevant disclosures of investment decisions); *cf. Hughes v. Rodriguez*, 31 F.4th 1211, 1219 (9th Cir. 2022) (district court erred in disregarding all of plaintiff's testimony where bodycam footage of arrest blatantly contradicted some but not all of the testimony; video did not depict whether plaintiff was punched <u>after</u> he was handcuffed, and panel majority found audio of the arrest was also unclear as to the sequence).

### A.    Excessive Force

Defendants assert that Defendant Jones is entitled to qualified immunity from the excessive force claim against him on the grounds that it was not clearly established that he had a duty to remove Plaintiff's handcuffs based on the facts and circumstances known to him at the time.  Dkt. No. 55 at 9-10.  Defendants also assert that Defendant Jones is entitled to qualified immunity on the claim that Defendant used excessive force in getting Plaintiff in and out of the patrol car.  *Id.* at 11.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants

1   can have a reasonable, but mistaken, belief about the facts or about what the law requires

2   in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v.*

3   *Briggs*, 475 U.S. 335, 341 (1986)).

4          Once a defendant has raised qualified immunity as a defense to a claim, a plaintiff

5   must show "(1) that the right was violated; and (2) that the right was clearly established at

6   the time of the alleged misconduct." *Sato v. County of San Bernardino*, No. 22-55853,

7   2023 WL 7211397, at *3 (9th Cir. Nov. 2, 2023) (quoting *Isayeva v. Sacramento*

8   *Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). Plaintiff bears the burden of showing

9   that the right at issue was clearly established. *Id.* (internal citation omitted). "There need

10  not be a case directly on point to defeat an officer's qualified immunity defense, but

11  existing case law must have put 'every reasonable official' on notice that their conduct

12  was unconstitutional." *Martinez v. High*, 91 F.4th 1022, 1031 (9th Cir. 2024). "An

13  officer 'cannot be said to have violated a clearly established right unless the right's

14  contours were sufficiently definite that any reasonable official in defendant's shoes

15  would have understood that he was violating it." *Kisela v. Hughes*, 584 U.S. 100, 105

16  (2018) (finding officer entitled to qualified immunity against an excessive force claim

17  because there was no clearly established law by which any competent officer would have

18  known that shooting plaintiff, who was armed with a knife, to protect a bystander would

19  violate the Fourth Amendment).

20         The court has discretion to decide which qualified immunity prong to address first:

21  (1) whether the plaintiff has alleged the deprivation of an actual constitutional right; and

22  (2) whether such right was clearly established such that it would be clear to a reasonable

23  officer that his conduct was unlawful in the situation he confronted. *See Pearson v.*

24  *Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that

25  required determination of a deprivation first and then whether such right was clearly

26  established, as required by *Saucier*, 533 U.S. at 194). If the court "answer[s] either

27  question in the negative, the officer is entitled to qualified immunity." *See Smith v.*

28

United States District Court
Northern District of California

11

1   *Agdeppa*, 56 F.4th 1193, 1200 (9th Cir. 2022).

2          "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of

3   the party seeking summary judgment," and must, as in other cases, view the evidence in

4   the light most favorable to the non-movant.  *See Tolan v. Cotton*, 572 U.S 650, 656

5   (2014).  For example, regarding the first prong, the threshold question must be: Taken in

6   the light most favorable to the party asserting the injury, do the facts alleged show the

7   officer's conduct violated a constitutional right?  *Saucier*, 533 U.S. at 201.  "[R]egardless

8   of whether the constitutional violation occurred, the [official] should prevail if the right

9   asserted by the plaintiff was not 'clearly established' or the [official] could have

10  reasonably believed that his particular conduct was lawful."  *Romero v. Kitsap County*,

11  931 F.2d 624, 627 (9th Cir. 1991).

12         A court determining whether a right was clearly established looks to "Supreme

13  Court and Ninth Circuit law existing at the time of the alleged act."  *Community House,*

14  *Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934,

15  936 (9th Cir. 1996).  In the absence of binding precedent, the court may look to all

16  available decisional law, including the law of other circuits and district courts.  *See*

17  *Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015) (only in absence

18  of decisional authority by Supreme Court or Ninth Circuit are other sources of decisional

19  law, such as out-of-circuit cases, considered).

20                    1.    <u>**Overly Tight Handcuffs**</u>

21         Defendants assert that although the Ninth Circuit has held that the application of

22  overly-tight handcuffs, in some circumstances, can constitute an excessive use of force,

23  none of the existing cases involve the same issue as in the instant matter: "is the

24  application of tight handcuffs excessive force when the tightness of the handcuffs is the

25  result of the physical size of the plaintiff, not the actions of the officer?"  Dkt. No. 55 at

26  10.  Defendants assert that they have found no controlling caselaw on this specific issue.

27  *Id.*  Defendants contend this was not a case where Defendant Jones intentionally placed

28

United States District Court
Northern District of California

Plaintiff in overly tight handcuffs or was callously indifferent to the tightness of the handcuffs. *Id.* Rather, Defendant Jones was required by the Sheriff's Office policy to restrain Plaintiff, especially given his size and the violent nature of the charges for which he was arrested. *Id.* at 11. Defendants assert that Defendant Jones placed the cuffs on Plaintiff as loosely as possible and made sure they could not get any tighter. *Id.* He also tried to do what he could to make Plaintiff more comfortable by placing a second set of handcuffs on Plaintiff to relieve any possible pressure on his shoulders. *Id.* Defendants assert that Defendant Jones' actions were limited by the tools available to him at the scene. *Id.* To the extent that Defendant Jones "ignored" Plaintiff's complaints about the handcuffs, Defendants assert his lack of response was not because of indifference but rather the knowledge that he had already done everything he could to accommodate Plaintiff's size. *Id.*

In opposition, Plaintiff denies that Defendant Jones tried to do what he could to make Plaintiff more comfortable with a second set of handcuffs, and that this assertion is belied by the fact that Defendant Jones did not have handcuff keys when he arrived at FOB. Dkt. No. 67 at 19. Plaintiff asserts that since Defendant Jones did not have keys, he could not have removed them and then added a second set of handcuffs. *Id.* Plaintiff also denies that it was ever proven that his size was the cause for his injuries. *Id.* He asserts that there is a plethora of excessive force handcuffing cases from the last three decades that put officers on notice that the way he placed overly tight handcuffs around Plaintiff's wrists and ignored his complaints of pain violated his rights. *Id.* at 20, citing *Hughey v. Easlick*, 3 F.4th 283 (6th Cir. 2021).[6]

In reply, Defendants assert that Plaintiff has failed to contradict the evidence

_____

[6] Plaintiff also asserts that a little over a year prior to Plaintiff's encounter with him, Defendant Jones had an incident with another African American male pre-trial detainee involving handcuffs and excessive force. Dkt. No. 67 at 20. However, this allegation is not relevant to the issue of whether Defendant Jones's conduct was reasonable with regard to Plaintiff's specific situation.

United States District Court
Northern District of California

showing that Defendant Jones is entitled to qualified immunity.  Dkt. No. 68.  First, Defendants assert that the fact that Defendant Jones could not find his handcuff key at FOB does not tend to show that he did not have a key at the time of Plaintiff's arrest and therefore could not have placed a second sent of handcuffs on him as he attests.  Dkt. No. 68 at 3.  Defendants assert that rather, the undisputed video evidence conclusively shows that when Plaintiff arrived at FOB, he was restrained in two sets of cuffs.  *Id* at 3-4., citing Ex. D at 00:06.  Defendants assert that this video evidence confirms Defendant Jones' statement that he added a second set of cuffs to Plaintiff's wrists at the scene of the arrest.  *Id.* at 4.  Defendants also contend that Plaintiff does not cite to any case in opposition that would have put a reasonable police officer on notice that the use of handcuffs on a person of large size amounted to excessive force.  *Id.*  Defendants contend that the cases cited by Plaintiff do not involve situations where the tightness of handcuffs was due to the plaintiff's large size.  *Id.*  Defendants assert that it remains undisputed that Defendant Jones did not intentionally place tight handcuffs on Plaintiff to punish or injure him, but that he was required by policy to transport Plaintiff in handcuffs and that he placed the handcuffs as loosely as possible.  *Id.* at 4-5.  Defendants assert that Defendant Jones is entitled to qualified immunity based on the undisputed facts and the absence of any controlling authority clearly establishing that his conduct was unlawful.  *Id.* at 5.

It is undisputed that Ninth Circuit precedent establishes that the application of overly tight handcuffs that causes injury can constitute excessive force.  *See Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (qualified immunity denied where handcuffs were applied too tightly and not loosened when plaintiff complained); *see also Alexander v. County of Los* Angeles, 64 F.3d 1315, 1322-23 (9th Cir. 1995) (same).  *See also Meredith v. Erath*, 342 F.3d 1057, 1061, 1063-64 (9th Cir. 2003) (qualified immunity denied on excessive force claim where plaintiff was forcibly handcuffed although not posing a safety or flight risk and detained in overly tight

handcuffs for 30 minutes while her complaints were ignored);  *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (qualified immunity denied where police officer handcuffed plaintiff in an abusive manner, tightness caused pain and discoloration to his wrists, and officer refused requests to loosen them).  Furthermore, at least one of these Ninth Circuit cases indicate that an excessive force claim may apply not only to the officer who initially placed the defendant in handcuffs, but also against other officers who were aware of the defendant's complaints of pain and ignored his request to loosen them.  *See Alexander*, 64 F.3d at 1323 (denying qualified immunity as to all officers who knew and ignored plaintiff's complaints of overly tight handcuffs on excessive-force claim); *see also*, *Heitschmidt v. City of Houston*, 161 F.3d 834 (5th Cir. 1998) (reversing dismissal of excessive force claim against officers who ignored defendant's request to loosen painfully tight handcuffs for several hours).  Accordingly, the excessive force claim will be analyzed with respect to both Defendant Jones and Husted.

        To overcome Defendants' assertion of qualified immunity, Plaintiff must identify a case where officers acting under similar circumstances as Defendants were held to have violated the Fourth Amendment.  *See Kisela*, 584 U.S. at 105.  Defendants assert that such circumstances would have to include a large plaintiff whose size is the cause of the tightness, not the actions of the officer.  Dkt. No. 55 at 10.  However, the Ninth Circuit has clarified that a defendant is not entitled to qualified immunity "simply because 'the very action in question has [not] previously been held unlawful,'" and that state officials "'can still be on notice that their conduct violates established law in novel factual circumstances' – i.e., even without a prior case that had 'fundamentally similar' or 'materially similar facts.'"  *Sandoval v. County of San Diego*, 985 F.3d 657, 672 (9th Cir. 2021) (finding defendant not entitled to qualified immunity in new factual circumstances where a nurse is told that a patient is sweating, disoriented, and in need of a more thorough look but does nothing more than perform a quick 10-second blood test because a reasonable nurse in defendant's position would have understood that his treatment of

United States District Court
Northern District of California

1    the pretrial detainee, or lack thereof, was constitutionally inadequate).

2        With respect to the first prong, under the Ninth Circuit cases above, which were

3    clearly established in July 2022, it is unlawful to ignore a plaintiff's complaints of overly

4    tight handcuffs and do nothing, such that defendants' conduct can amount to excessive

5    force. *See supra* at 14.  In the case at bar, it is undisputed that Plaintiff initially

6    complained that his handcuffs were overly tight to Defendants Jones and Husted.

7    According to Plaintiff, he was in the car for approximately 15 minutes until he was

8    removed from the car by Defendant Husted for a field identification.  Oxley Decl. ¶ 9.

9    However, Defendant Jones states that he was the one who took Plaintiff out of the car,

10   and Defendant Husted states that he observed Defendant Jones doing so.  Jones Decl. ¶ 6;

11   Husted Decl. ¶ 6.  Both defendants attest that Defendant Jones applied double handcuffs

12   to address Plaintiff's complaint.  *Id.*  Although Plaintiff denies that Defendant Jones used

13   double handcuffs, the incontrovertible video evidence shows that Plaintiff arrived at FOB

14   in double handcuffs which contradicts his allegation. *See supra* at 5.  The Court need not

15   adopt Plaintiff's version of facts in this regard because no reasonable jury could believe

16   it. *See Scott*, 550 U.S. at 380-383.  Other than his self-serving affidavit which has been

17   contradicted in this respect by incontrovertible evidence, Plaintiff offers no evidence to

18   show that there is a genuine issue for trial on this fact.  Accordingly, there is no genuine

19   dispute that Defendant Jones did not ignore Plaintiff's complaints but rather, attempted to

20   address them by applying double handcuffs.  As such, it matters not whether it was

21   Plaintiff's size that caused the injury, as Plaintiff refutes in opposition, because

22   Defendants responded to Plaintiff's complaints and attempted to address the tightness,

23   whatever the cause.  Moreover, Plaintiff offers no evidence in opposition to create a

24   genuine dispute over the cause of the tightness and injury being something other than his

25   size.  Based on the foregoing, the Court finds Plaintiff has failed to establish that

26   Defendants' conduct violated his constitutional rights.

27       Even if Plaintiff was able to satisfy the first prong, he must also meet his burden

28

United States District Court
Northern District of California

1   under the second prong, i.e., that the right was "clearly established" such that Defendants

2   were on notice that their conduct was unlawful in the situation before them. *Martinez*, 91

3   F.4th at 1031. In opposition, Plaintiff cites to five cases to counter Defendants' qualified

4   immunity defense: (1) *Cooper v. City of Virginia Beach, VA*., 817 F.Supp. 1310 (E.D.

5   Va. 1993), *aff'd sub nom*, *Cooper v. City of Virginia Beach*, 21 F.3d 421 (4th Cir. 1994);

6   (2) *Hanig v. Lee*, 415 F.3d 822 (8th Cir. 2005); (3) *Mglef v. Gardner*, 974 F.3d 1151

7   (10th Cir. 2020); (4) *Hughey v. Easlick*, 3 F.4th 283 (6th Cir. 2021); and (5) *Karn v. PTS

8   of Am., LLC*, 590 F.3Supp.3d 780 (D. Md. 2022). Dkt. No. 67 at 18-20.

9       *Cooper* involved an excessive force claim based on handcuffing during an arrest

10  for driving under the influence of alcohol. *Cooper*, 817 F.Supp. at 1319. In *Cooper*, the

11  plaintiff alleged that the "handcuffs were too tight" and "they hurt," without any

12  allegation of lasting or serious injury. *Id.* The court held that without more, handcuffing

13  plaintiff in itself was not unreasonable and granted defendants' motions for summary

14  judgment on the claim. *Id.* This case out of Virginia did not involve the application of

15  double handcuffs on a large sized plaintiff in the absence of ready alternatives.

16  Therefore, *Cooper* could not have put Defendants on notice that their conduct was

17  unconstitutional in the circumstances before them.

18      *Hanig* involved an excessive force claim with the issue on appeal before the

19  Eighth Circuit being the existence of long-term or permanent physical injury. *Hanig*, 415

20  F.3d at 824. The evidence in that case was clear that the arresting officer improperly

21  applied the handcuffs on the under-aged plaintiff. *Id.* However, it did not involve the use

22  of double handcuffs in the absence of ready alternatives on a large sized plaintiff as in the

23  instant matter. Accordingly, it cannot be said that *Hanig* put Defendants on notice that

24  their conduct was unconstitutional.

25      *Mglej* involved a claim of excessive force based on the overly tight application of

26  handcuffs at arrest and a deputy who ignored the arrestee's initial complaints of tightness.

27  *Mglej*, 974 F.3d at 1158, 1165. Mglej was arrested for a minor offense, i.e., failing to

28

provide the deputy with his name, handcuffed behind his back, and placed in the front seat of the patrol car. *Id.* at 1158. According to Mglej, when he complained the handcuffs were too tight, the deputy told him to stop saying that because it did not matter. *Id.* Later, the deputy noticed that Mglej's hands were red and tried to loosen them, resulting in the handcuffs malfunctioning; the deputy found it necessary to remove the handcuffs and had to use tools from his garage to pry the handcuffs off after twenty minutes of work, causing Mglej significant pain and injury in the process. *Id.* The Tenth Circuit found these allegations established that the deputy used more force than was objectively reasonable because the crime was a minor misdemeanor, Mglej posed no threat to the safety of the officer or others, and he was not resisting or trying to evade arrest. These facts make *Mglej* distinguishable from Plaintiff's circumstances which involved a serious and violent offense and a suspect of large size who posed a threat to others. Nor did *Mglej* involve the application of two sets of handcuffs and a lack of alternative restraints. Accordingly, it cannot be said that *Mglej* placed the lawfulness of Defendant Jones' actions, i.e., placing Plaintiff in double handcuffs as loosely as possible with no alternative restraints, beyond debate. *See Evans*, 997 F.3d at 1066; *Orn*, 949 F.3d at 1171-73.

*Hughey* involved a plaintiff who was arrested after a traffic stop for speeding because her car was uninsured and unregistered and there was an outstanding warrant for her failure to appear in court for a traffic violation. *Hughey*, 3 F.4th at 286. Hughey alleged that the arresting officer twisted her left arm behind her back, causing a tear to her rotator cuff, as he handcuffed her and failed to check the tightness of the handcuffs; he continued to ignore her complaints of shoulder pain and did nothing until they arrived at the hospital where he removed her handcuffs. *Id.* at 287, 290. The Sixth Circuit found the officer was not entitled to qualified immunity because there was a genuine dispute of material fact when viewing the facts in the light most favorable to Hughey. *Id.* at 293. *Hughey* is distinguishable from Plaintiff's case because it did not involve a suspect

18

1  accused of a serious offense and, unlike the deputy in *Hughey*, there is no genuine dispute

2  as to whether Defendant Jones responded to Plaintiff's complaints of pain as the

3  incontrovertible evidence shows that he adjusted Plaintiff's restraints.  Accordingly, it

4  cannot be said that *Hughey* put Defendant Jones on notice that his conduct was

5  unconstitutional.

6      Lastly, *Karn* involved a pretrial detainee who was restrained in excessively tight

7  handcuffs during an interstate transport from Maryland to Kentucky by private transport

8  companies; the trip took approximately a day and included a drive through the night.

9  *Karn*, 590 F.Supp. at 793-94.  Plaintiff alleged that when he initially complained to the

10  guards that the restraints were painfully tight, he was told to "shut up and get in the van"

11  and that he would "get used to it."  *Id.* at 819.  Although there were adjustments during

12  the trip, plaintiff alleged that it was never enough to relieve the pressure on his hands

13  which had purple and blue rungs around both wrists.  *Id.*  Based on the undisputed facts

14  that the detainee was restrained for a day and sustained visible injuries on his hands, the

15  Maryland court denied summary judgment.  *Id.*  *Karn* is also distinguishable from

16  Plaintiff's case which involves a much shorter period of time and the application of

17  double handcuffs in response to complaints of pain.  Accordingly, it cannot be said that

18  *Karn* placed the lawfulness of Defendants' actions in the circumstances before them

19  beyond debate.

20      Based on the foregoing, the Court finds none of Plaintiff's cases show that there

21  existed clearly established law that put Defendants on notice that their conduct in the

22  circumstances before them was unlawful.  First, none of the cases are from the Supreme

23  Court or Ninth Circuit and therefore not binding.  *See Community House, Inc.*, 623 F.3d

24  at 967.  Furthermore, none of these extra-circuit cases put Defendants on notice that their

25  actions were unreasonable as they are each distinguishable from Plaintiff's case.

26      Here, it is undisputed that Plaintiff was suspected of a serious and violent crime,

27  the existing policy required that he be restrained during transport due to the serious

United States District Court
Northern District of California

charges and his size, and Defendants had no reasonable alternatives to handcuffs. Accordingly, Defendants Jones and Husted's mistake, if any, in believing that it was lawful to place Plaintiff in double handcuffs in the absence of better alternatives was reasonable. *See Saucier*, 533 U.S. at 205 (if officer's mistake as to what the law requires is reasonable, he is entitled to qualified immunity). In other words, it cannot be said that *any* reasonable official in defendants' shoes would have understood that their conduct under these circumstances violated the Fourth Amendment. *See Kisela*, 584 U.S. at 105.

With regard to Defendant Williams, Defendants submit evidence showing that Defendant Williams was not at the scene where Plaintiff was arrested and that he only interacted with Plaintiff at FOB. *See supra* at 5. In opposition, Plaintiff asserts that he cannot determine the identity of the deputy in the video and that it is not proven that it is Defendant Williams. Dkt. No. 67 at 22. He asserts that Defendant Williams was aware at the time of his initial report that Plaintiff was "complaining of wrist pain from handcuffs" and "did nothing to prevent the harm that was caused from excessive force by way of handcuffing and ignored Plaintiff['s] complaints." *Id.* at 23. However, Plaintiff's assertions are not sufficient to establish the existence of a genuine dispute of a material fact of whether Defendant Williams was present at the scene, particularly as the FOB video shows the deputy wearing a uniform with the name, "Z. Williams" on it. Ex. D at 00:39, 00:56. Furthermore, Plaintiff's own evidence in opposition indicates that Defendant Williams was at FOB and made the initial report upon Plaintiff's arrival. Dkt. No. 67 at 56. With respect to Defendant Williams' conduct, the video clearly shows that Defendant Williams promptly removed Plaintiff's handcuffs after he was placed in the interview room and then summoned paramedics to treat Plaintiff's complaints of pain. *See supra* at 6. Nor is there any evidence that Defendant Williams was involved in the decision to transport Plaintiff to MDF to booking rather than the hospital for further treatment. It simply cannot be said that a reasonable jury would return a verdict in favor of Plaintiff for excessive force against Defendant Williams based on this evidence.

United States District Court
Northern District of California

1    *Celotex Corp.*, 477 U.S. at 324.  Accordingly, Defendant Williams is entitled to summary

2    judgment on this claim.

3              **2.        Force Used in Moving Plaintiff In and Out of Patrol Car**

4              Plaintiff alleged in the complaint that Defendant Jones "violently put [him] into

5    the back of the Sheriff vehicle."  Dkt. No. 1 at 3.  But in his declaration, Plaintiff alleged

6    that after he was first placed in the patrol car, he was later "yanked out of the vehicle

7    hard" by Defendant Husted, not Defendant Jones.  Oxley Decl. ¶ 9, Dkt. No. 67 at 6.

8    Defendant Jones states that he was the one who took Plaintiff out of the car.  Jones Decl.

9    ¶ 6.  Defendants assert that Defendant Jones is entitled to qualified immunity on this

10   claim.  Dkt. No. 55 at 11.

11             Defendants rely on *Saucier v. Katz*, 533 U.S. 194 (2001), in which the Supreme

12   Court held that officers were entitled to qualified to immunity as "the right to make an

13   arrest or investigatory stop necessarily carries with it the right to use some degree of

14   physical coercion or threat thereof to effect it."  *Id.* at 208 (quoting *Graham v. Connor*,

15   490 U.S. 386, 396 (1989)).  In *Saucier*, two military police officers dragged a protester

16   away from an event with his feet "barely touching the ground" and then either shoved or

17   threw him into a van, but caused no injuries.  *Id.* at 198.  Defendants assert that

18   Defendant Jones's actions in taking Plaintiff in and out of the patrol car were necessary to

19   complete the investigation of the crime at the scene, address Plaintiff's complaints about

20   the handcuffs, and transport him to and from FOB to be interviewed.  Dkt. No. 55 at 11-

21   12.  Defendants assert that given Plaintiff's large size and the fact that he was restrained

22   while being moved in and out of the patrol car, Defendant Jones had to use some amount

23   of force to get him out of the car, including grabbing Plaintiff by the arm and applying

24   force to extricate him from the car.  *Id.* at 12.  Based on these facts, Defendants assert

25   Defendant Jones is entitled to qualified immunity on this aspect of the excessive force

26   claim.  *Id.*  Plaintiff makes no argument in opposition.  *See generally* Dkt. No. 67.

27             Viewing the evidence in the light most favorable to Plaintiff, Defendants are

28                                                      21

United States District Court
Northern District of California

entitled to qualified immunity on this claim.  Whether it was Defendant Jones or Defendant Husted, there is no dispute that some amount of force was used in moving Plaintiff in and out of the patrol car.  However, an officer may be entitled to use more force than was needed if he acted reasonably but mistakenly.  *Saucier*, 533 U.S. at 205; *see also Graham*, 490 U.S. at 396.  Defendants have met their burden of establishing that their actions were reasonable due to Plaintiff being in handcuffs and his large size, facts which are clear from the video evidence.  *See Doe*, 54 F.3d at 1450.  In opposition, Plaintiff has failed to submit any evidence to show that there are disputed issues of fact. *See Celotex Corp.*, 477 U.S. at 324.  Accordingly, Defendants are entitled to qualified immunity on this aspect of the excessive force claim.

**B.    Deliberate Indifference to Medical Needs**

In the complaint, Plaintiff alleged that his hands were shaking and swollen after the handcuffs were removed, and that Defendant Gianopoulos "stared at my hands and said someone would see you."  Dkt. No. 1 at 4.  Plaintiff alleged that he was not seen by medical staff.  *Id.*  The Court construed Plaintiff's allegations as a claim for deliberate indifference to serious medical needs.

A claim for a violation of a pretrial detainee's right to adequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment.  *See Gordon v. County of Orange*, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018).  The claim is evaluated under an objective deliberate indifference standard.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  With regard to the third element, the defendant's conduct must be

United States District Court
Northern District of California

objectively unreasonable – "a test that will necessarily turn[] on the facts and circumstances of each particular care." *Id.* (citations and internal quotation marks omitted). The mere lack of due care by a state official is not enough. *See Alexander v. Nguyen*, 78 F.4th 1140, 1144-46 (9th Cir. 2023) (psychiatrist's failure to move pretrial detainee to different unit following attack from fellow patient did not violate 14th Amendment because psychiatrist acted reasonably by considering relevant factors, evaluating risk of future violence against detainee, effect of transfer on detainee's treatment, and implementing measures to reduce incidents of future incidents, and treatment exceeded accepted professional standards). The four-part test articulated in *Gordon* requires the plaintiff to prove more than negligence, but less than subjective intent –something akin to reckless disregard. *Gordon*, 888 F.3d at 1125.

Defendants assert that Defendant Gianopoulos was not deliberately indifferent to a serious medical need of Plaintiff, he did not delay or deny access to medical care, and any alleged deliberate indifference by Defendant did not cause Plaintiff any harm. Dkt. No. 55 at 14. Defendants assert that by the time Plaintiff was being interviewed by Defendant Gianopoulos, Plaintiff's alleged injury had already occurred and he was no longer handcuffed. *Id.* Defendants also assert that paramedics had also determined that Plaintiff's wrists were not broken and did not need emergency medical care, although they gave him the option of being transported to the hospital for further evaluation. *Id.* Defendants assert that Plaintiff was assessed by a nurse when he was booked at MFD and cleared to stay in jail rather than being sent to the hospital. *Id.* Defendants also assert that Plaintiff did not seek further medical care in jail until July 18, 2022, which was eleven days after his arrest. *Id.* at 14-15. Defendants contend that Defendant Gianopoulos is therefore entitled to judgment as a matter of law. *Id.* at 15.

In opposition, Plaintiff repeats his assertion that he informed Defendant Gianopoulos of the injuries to his wrists. Dkt. No. 67 at 24. Plaintiff asserts that Defendant Gianopoulos was made aware that his requests for his handcuffs to be

loosened were ignored. *Id.* Plaintiff also asserts that Defendant Gianopoulos violated his *Miranda* rights during the interview and that Defendant became upset when Plaintiff refused to answer any further questions without counsel present. *Id.* at 25. Plaintiff believes that Defendant Gianopoulos was responsible for the paramedics not following through with taking him to the hospital based on the facts that the paramedics were still present when the interview began and Defendant Williams' statement that he advised Defendant Gianopoulos and his supervisor of Plaintiff's desire to go to the hospital. *Id.* Plaintiff asserts that Defendant Gianopoulos "is believe[d] to be influential in being deliberately indifferent to Plaintiff['s] medical needs. *Id.* Plaintiff asserts it was "obvious" that Defendant Gianopoulos "actually [knew] of the risk and deliberately disregarded it." *Id.* at 26.

In reply, Defendants assert that Plaintiff's opposition fails to address any of the arguments in their summary judgment motion. Dkt. No. 68 at 6. They assert that Plaintiff's allegations regarding the failure to give *Miranda* warnings during the interview is both false and irrelevant. *Id.* Defendants assert that the only subsequent treatment Plaintiff received were analgesics and a wrist splint, and that nothing in Plaintiff's opposition suggests that any delay in seeing a doctor caused Plaintiff to suffer any additional injury. *Id.*

After a careful review of the evidence and construing it in the light most favorable to Plaintiff, the Court finds there exists no genuine dispute as to any material fact relating to Plaintiff's deliberate indifference claim against Defendant Gianopoulos. Defendants submit incontrovertible video evidence showing the entire interaction between Defendant Gianopoulos and Plaintiff in the interview room. Ex. D. Evaluating the evidence under *Gordon*'s four factors, the Court finds that the evidence shows no reckless disregard by Defendant Gianopoulos. With respect to the first factor, it is undisputed that Defendant Gianopoulos decided to "talk real quick" with Plaintiff before sending him to the hospital for further evaluation. *See supra* at 7. However, there is no evidence to support the

second factor, *i.e.*, that those conditions put Plaintiff at substantial risk of suffering serious harm.  Early on, Plaintiff made Defendant Gianopoulos aware of the pain in his wrists from the overly tight handcuffs; Defendant observed from the marks on Plaintiff's wrists that the handcuffs had been on a "little tight," which indicates at most that there were marks on his wrists from the handcuffs.  *See supra* at 7.  But by that time, Plaintiff had already been evaluated by paramedics who had determined that Plaintiff's wrists were not broken; other than Plaintiff's desire for further evaluation, the paramedics did not indicate that Plaintiff was facing any risk of serious harm if he did not receive further medical treatment at the hospital.  Accordingly, there is no evidence that Plaintiff was facing any risk of serious harm of which Defendant Gianopoulos had been made aware.  Defendant Gianopoulos also states that it did not appear to him that Plaintiff was in significant pain.  Gianopoulos Decl. ¶ 4.  The video shows that during the rest of the interview, Plaintiff was gesturing freely with his hands without any obvious discomfort.  Ex. D.  This evidence does not support the third factor, *i.e.*, that Defendant Gianopoulos failed to take "reasonable available measures to abate that risk," because there was no apparent risk to Plaintiff.  Lastly, there is no evidence establishing that Defendant Gianopoulos's failure to take available measures to abate a risk caused Plaintiff harm.  The undisputed evidence shows that he was diagnosed with carpal tunnel syndrome three weeks later, on August 9, 2022.  *See supra* at 7.  A neurologist confirmed the diagnosis approximately one month later, on September 15, 2022, and recommended continuing with wrist splints.  *Id*.  There is no evidence that the carpal tunnel was exacerbated by any delay in receiving further treatment by Defendant Gianopoulos.

Plaintiff believes that Defendant Gianopoulos was responsible for his transfer to MDF for booking rather than to the hospital, but even if this were true, the undisputed evidence establishes that Defendant did not act with reckless disregard to an obvious risk of harm to Plaintiff.  The video evidence clearly shows that no obvious risk to Plaintiff was apparent throughout the ten-minute interview with Defendant Gianopoulos.

United States District Court
Northern District of California

25

United States District Court
Northern District of California

Defendants have met their burden of establishing the absence of a genuine issue of material fact regarding Plaintiff's deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 323. In opposition, Plaintiff has failed to submit any evidence to show that there are disputed issues of fact. *Id*. at 324. Accordingly, Defendant Gianopoulos is entitled to summary judgment on this claim.

## CONCLUSION

For the reasons stated above, Defendants S. Jones, D. Husted, Z. Williams, and A. Gianopoulos's motion for summary judgment is **GRANTED**. Dkt. No. 55. The Fourth Amendment excessive force claims against Defendants Jones, Husted, and Williams and the Fourteenth Amendment claim against Defendant A. Gianopoulos are **DISMISSED** with prejudice.

This order terminates Docket Nos. 55 and 64.

**IT IS SO ORDERED.**

Dated: __January 31, 2025____

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.23\00510Oxley_grant-MSJ